## CHANDLER v. McKERRAL.
### No. 5011.

Circuit Court of Appeals, Seventh Circuit.
Jan. 3, 1934.

Frederick A. Lind and John D. Clancy, both of Chicago, Ill., Gates A. Timerman and Thomas Vennum, both of Minneapolis, Minn. (Vose & Lind, of Chicago, Ill., and Timerman & Vennum, of Minneapolis, Minn., of counsel), for appellant.

E. M. Sherlock and A. M. Loeser, both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

From a decree in favor of appellee against the Diamond Motor Parts Company and M. D. Chandler, its receiver, for $6,925 with interest, the receiver alone appeals.

The facts taken from the findings of the District Court may be stated briefly. The company was a Minnesota corporation located at St. Cloud, Minnesota. Mary McKerral was a "person of very limited education and business experience * * * was afflicted with curvature of the spine, and * * * cancer, which disorders greatly impaired her mentally and physically." She was induced to part with bonds and cash to the amount of $8,025 for the stock of the company, which "at no time had a market value, or any value." False and fraudulent representations were made to Mary McKerral, who parted with her property relying upon the truthfulness of such representations. The company never obtained a license to do business in either Illinois or Iowa, nor a permit from either state to sell its stock. All of the McKerral stock was acquired either in Illinois or Iowa.

The court found that the company received the stocks, bonds, and cash from Mary McKerral in trust, to be held by it until such time as its stock was listed on the New York Stock Exchange and the price supported at $3.25 per share; that the company failed to cause said stock to be listed or to have a market value of $3.25 per share and that it never returned the stocks, bonds, and cash which it received; that "the conditions precedent to purchase of said stock by her would be first performed before she would be a subscriber for said stock, or liable therefor"; that she tendered back all shares of stock in the company that were sent to her and has kept this tender good in court; and that the "trust relation, as established, has never been terminated, and continues to exist."

Appellant earnestly contends that the evidence fails to support the court's findings as far as they deal with fraudulent representations and the creation of a trust. It is not deemed necessary to review here all of the evidence bearing on these or other issues. It is sufficient to state our conclusion, which is that the oral testimony, supplemented by the letters from the company, sustain the findings.

■ In making its findings, the court properly took into consideration the mental and physical condition of the buyer. The inferences to be drawn from the declaration of a dividend out of capital, followed by a successful sale of more stock to the same buyer, for which the so-called dividend was used as part payment, are not favorable to the company; and this deduction, supported by other testimony of like character, undoubtedly weighed heavily against the company with Judge Carpenter when he held the scales and determined the facts.

■ Appellant also assigns error because the court failed to make findings of fact on his defense of *laches* and found against him respecting his contention that Mary McKerral was not justified in relying upon statements made by the company's agents respecting its promised action to list the stock on the Stock Exchange and to maintain a market therefor. While there is no fact finding as to Mary Mc-

Kerral's alleged *laches*, the record is replete with evidence which excused her from bringing suit prior to January, 1929. The company's letters in 1928 were so bright with promise and glowing with assurances of a successful business and asserted so strong a financial position that no court could have found her guilty of *laches* in failing to bring suit in the face of such reassuring statements. The president in a letter of October 9, 1928, after stating how he had worked diligently for months to acquire the assets of Gill Manufacturing Co. and a "nationally known valve manufacturer," concluded his letter by saying:

"We are not including a financial statement with this special report, as due to the matters above mentioned we have arranged to have a complete audit made of our books, as well as an appraisal of our plant and the plants of the companies involved. These figures will be consolidated into one sheet * * *. I can assure you, however, that the financial condition of this company is excellent at this time and the consolidated figures make a very attractive showing."

Within three months of the receipt of this letter, a receiver was appointed for this company and its debts exceeded $2,100,000, or more than the par value of all the outstanding stock. Shortly thereafter, the officers and directors of the company were indicted for using the mails in furtherance of a scheme to defraud.

Then, too, there are other letters. In August of 1927, the president of the American National Bank of St. Cloud wrote:

"* * * In reply wish to say that this concern is doing good business and we regard it as being well managed. According to their statement of December 1926, they show net assets of $850,000."

In the same year the treasurer of the company wrote her:

"We have your letter of February 27th and in reply would state that the matter of listing our stock on the Exchange has been postponed until such time as we feel we can support the price at its proper level.

"* * * All our efforts * * * have been centered along the line of sales distribution of our products throughout the United States, Canada and foreign countries. Today we feel that we occupy the position of the largest exclusive manufacturers of automobile replacement parts in the United States. * * *

"At the present writing it is not consid-ered that there will be any dividends declared much before July (four months hence), but we hope at that time, if the profits warrant, to make a substantial distribution."

In determining whether Mary McKerral relied on, or should have relied upon, the representations given to her and whether she should not have acted sooner, the court was no doubt impressed by her physical and mental condition in the year 1928. She died in the forepart of 1929. For some months previous thereto, she was confined to her bed because of arthritis, and the cancer from which she was suffering and from which she died was in its last stages. In the face of these facts, we cannot say the finding is unsupported by credible evidence.

Appellant also assigns error because the court entered its decree against the receiver as well as against the company. It is his contention that appellee's claim should have been allowed only as a general claim against the insolvent company.

In its conclusions of law, the court found:

"* * * The plaintiff in this District acted with diligence in order to recover her money and securities which she had entrusted to defendant corporation, and which defendant corporation illegally, contrary to the terms of its undertaking, and before the performance of the conditions required to be performed by it, had converted to its own use. Plaintiff in this District made application for appointment of a receiver of the property of said corporation located in this district, which application was in the nature of an application for attachment of said property in order to satisfy her claim. Said application was made before there was any application for ancillary receivership for said property in this District. The appointment of the ancillary receivers in this District was expressly made subordinate, inferior, and subject to the satisfaction of any claim, right or interest found to exist in plaintiff as against said corporation, and, to the extent of the amount necessary to be taken from said property in this District, to satisfy said claim, plaintiff had an attachment on the property of said corporation in this District prior to and superior to the claims of said ancillary receivers."

Appellant failed to except to this conclusion and also failed to assign error when taking this appeal.

Moreover, the ruling would be upheld even though proper exception and assignment of error had been made. This suit was for

the purpose of impressing a trust on the assets of the company arising out of the company's receipt of Mary McKerral's property upon the understanding that the same should be retained until the company's stock was listed on the Stock Exchange. She was induced to enter into this agreement, so the bill alleges, through the fraudulent representations of the company's salesmen. Whether the assets of the company were impressed with a trust, in view of the unlawful sale of the securities turned over by Mary McKerral, presents a legal question which we need not decide. It is sufficient to say that appellee asserted the affirmative of the proposition and appellant disputed it. The settlement of this disputed question was the basis of a court order, which was duly entered and from which no appeal was taken.

In the District Court, appellee's bill was filed, and an injunction entered restraining the company from disposing of its assets in this district. This was before ancillary receivers had been appointed in this court. Appellant and his co-receivers appeared in this suit and sought a vacation of the restraining order. That restraining order was vacated upon their motion, but upon condition that appellant deposit $10,000 with the clerk. The money was deposited. Shortly after Mary McKerral filed her bill, a judgment was taken by another creditor company against the company in Chicago, and the property of the company in the Northern District of Illinois was attached. The receivers appeared in said action and made answer, a portion of which is as follows:

"Your respondents further respectfully represent to this court that in the case of Mary E. McKerral against the Diamond Motor Parts Company, in equity number 8988 in this court, there has heretofore been entered an order on the motion of said Mary E. McKerral in said cause, that said receivers retain in this jurisdiction approximately $10,000.00 in goods or property to abide the decision of said cause, and your said respondents respectfully represent that said order in so far as it applies to said assets is entitled to priority over said alleged judgment."

Appellant there undertook to state the conditions upon which the money was deposited with the clerk, all of which is in accord with appellee's contention as to the condition of the deposit, which was that Mary McKerral should have a first lien on the $10,000, provided she established the existence of her claim as alleged in her complaint. The position thus solemnly and deliberately taken can not now be repudiated.

Other contentions made by appellee in support of the decree need not be considered. Likewise, we need not pass upon appellant's contention in the District Court that he was entitled to recover an assessment equal to $1 on all stock issued to Mary McKerral, for reasons above stated and for the further reason that in this court appellant waived his claim to recover on said assessment.

The decree is affirmed.